STATE, RESPONDENT, *v.* TUFFS, APPELLANT.

(No. 3,927.)

(Submitted June 4, 1917.   Decided June 18, 1917.)

[165 Pac. 1107.]

*Licenses—Itinerant Venders—Principal and Agent—Del Credere Commissions—Penal Statutes—Construction.*

Licenses—Itinerant Venders—Who are Not.
    1. *Held,* that the representative or agent of a company or corporation which is doing business at a fixed place, who takes orders for future delivery of goods kept by his principal in connection with and handled through its fixed place of business, prices at which they

are sold being fixed by it, title to the goods remaining in it, and undelivered goods to be returned to it, is not an itinerant vender, within the meaning of section 1 of Chapter 110, Laws of 1911, and therefore not required to procure the license provided for by the Act.

[As to license taxes imposed by states upon peddlers, see note in 96 Am. St. Rep. 844.]

Same—Sales—Agency—*Del Credere* Commissions.
2.  Where a dealer consigns goods with the understanding that title to them shall remain in him until sold and delivered by the consignee, who shall be responsible for the payment of their purchase price and return undelivered goods to the consignor, the relationship created is substantially that of principal and agent to sell upon a *del credere* commission.

Principal and Agent—Agreement to Secure Against Loss.
3.  A principal and his agent may agree that the former shall be secured against loss on account of sales to irresponsible parties or on account of the mistakes or dishonesty of the agent.

Penal Statutes—Construction.
4.  The provisions of a statute which is penal in character are not to be extended by implication.

*Appeal from District Court, Ravalli County; R. Lee McCulloch, Judge.*

ACTION by the state against F. A. Tuffs. From a judgment of guilty and from an order denying him a new trial, defendant appeals. Reversed and remanded.

*Mr. J. D. Taylor,* for Appellant, submitted a brief and argued the cause orally.

An ''itinerant vender'' has been defined to be a person who sells and delivers the identical goods he carries with him. (*State* v. *Lee,* 113 N. C. 681, 37 Am. St. Rep. 640, 18 S. E. 713.)   Only the person who itinerates for trading purposes is a peddler. So, an employer, though he be owner of the goods, the team and vehicle, is not required to obtain a license or be subject to any forfeiture for failure so to do. (*Wrought Iron Range Co.* v. *Johnson,* 84 Ga. 754, 8 L. R. A. 273, 3 Interstate Com. Rep. 146, 11 S. E. 233.)   It is the method of disposing of the goods which makes one a peddler.   A peddler is simply one who peddles, and anyone peddles who sells at retail from place to place, going from house to house, carrying the goods to be offered for sale with him. (*Dewitt* v. *State,* 155 Wis. 249, 144 N. W. 253.)

In *Crenshaw* v. *Arkansas,* 227 U. S. 400, 57 L. Ed. 565, 33 Sup. Ct. Rep. 294, the court says a person who solicits orders by sample from house to house for a resident merchant is not a ·peddler. (See, also, *Davenport* v. *Rice,* 75 Iowa, 74, 9 Am. St. Rep. 454, 39 N. W. 191.) And employees of a merchant who has an established place of business in the state who go through the surrounding country soliciting orders which they later deliver are not peddlers. (*Waterloo* v. *Heely,* 81 Ill. App. 310; *Commonwealth* v. *Eichenberg,* 140 Pa. St. 158, 21 Atl. 258; *State* v. *Wells,* 69 N. H. 424, 48 L. R. A. 99, 45 Atl. 143; *Commonwealth* v. *Farnum,* 114 Mass. 267; *Stuart* v. *Cunningham,* 88 Iowa, 191, 20 L. R. A. 430, 55 N. W. 311; *Rex* v. *McKnight,* 10 Barn. & C. 734; 109 Eng. Reprint, 623.) Nor is one a peddler who solicits orders for a nonresident grocer and tea house, and at the time of delivery solicits further orders, the solicitation being done at the residence of the purchasers. (*Great Atlantic & Pacific Tea Co.* v. *Tippecanoe,* 85 Ohio St. 120, 96 N. E. 1092.) By the decided weight of authority it has been held that one who sells by order or sample, delivery to be made at another time, is not a peddler. (*Ideal Tea Co.* v. *Salem,* 77 Or. 182, 150 Pac. 852; *Wausau* v. *Heideman,* 119 Wis. 244, 96 N. W. 549; *State* v. *Hoffman,* 50 Mo. App. 585; *People* v. *Jarvis,* 112 N. Y. Crim. Rep. 333, 19 App. Div. 466, 46 N. Y. Supp. 596.)

*Mr. J. B. Poindexter,* Attorney General, and *Mr. John H. Alvord,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This cause was submitted upon an agreed statement of facts. The defendant was found guilty and appealed from the judgment and from an order denying him a new trial.

The prosecution was conducted under Chapter 110, Laws of [1] 1911. Section 1 of the Act defines an itinerant vender, and that definition, so far as applicable here, follows: ''Every person who personally solicits orders for the future delivery of any goods, wares or merchandise, either by or without sample, including peddlers and hawkers, is an itinerant vender within the meaning of this Act; Provided, however, that this section shall not apply * * * to * * * the representative of any * * * corporation doing business at a fixed place of business, and taking orders for the future delivery of any goods, wares or merchandise, kept at or in connection with and handled through such fixed place of business.''

The acts of the defendant bring him within the inhibition of the statute unless he belongs to the class mentioned in the proviso, and the only question presented for solution is: Was the defendant the representative of a corporation doing business at a fixed place of business, and taking orders for the future delivery of goods kept by such corporation in connection with and handled through its fixed place of business? If he was such representative, the statute does not apply to him. If he was not, he was required to procure a license, and his failure to do so subjected him to the penalty prescribed by the statute.

The question for solution seems to be answered by the agreed statement of facts itself. It was agreed in the court below as follows: (1) The Grand Union Tea Company is a corporation engaged in mercantile business in this state, with a fixed place of business in Helena. (2) Defendant was in the employ of the company, soliciting orders from various persons in Ravalli county ''for said Grand Union Tea Company'' for coffee, tea and spices kept by the company at its store in Helena. (3) The orders, when taken, were sent by mail to the company at Helena and by it filled and the goods then shipped to the company's order to Hamilton in care of the defendant. A draft accompanied the bill of lading and the carrier was instructed to deliver the goods to defendant upon receiving payment of the draft. (4) Upon receipt of the goods, defendant then delivered

them "to the various customers of said Grand Union Tea Com-
pany who had previously ordered the same. *  *  * That all
the goods delivered by Mr. Tuffs were previously ordered from
the Grand Union Tea Company by the various customers to
whom delivery was made." (5) The orders taken were not
signed by the customers, and the names of the customers were
not known to the company, but were kept by defendant sub-
ject to inspection by the company. (6) The company looks to
the defendant for the price of the goods so shipped by it, except
such portions as are not delivered; these to be returned to the
company. (7) The defendant traveled about in a vehicle solicit-
ing the orders, but no goods were sold by him from his vehicle,
and the only goods delivered by him were such as had pre-
viously been ordered, and each individual order filled by the
company from its stock kept in Helena.

It is made plain by this agreed statement that the Grand
Union Tea Company is engaged in mercantile pursuits at a fixed
place of business in this state and that the defendant was in
its employ in soliciting orders for goods kept by the company
in stock at its Helena store. He solicited orders—not for him-
self but "for said Grand Union Tea Company." Each order
was filled separately by the company from its stock in Helena
and the orders thus filled were delivered, not to the defendant's
customers, but "to the various customers of said Grand Union
Tea Company who had previously ordered the same." As if
to make this fact more emphatic, the statement is repeated in
substance: "All the goods delivered by Mr. Tuffs were previ-
ously ordered from the Grand Union Tea Company by the vari-
ous customers to whom delivery was made." Goods previously
ordered by a customer but for any reason not delivered to him
are returned to the company. These provisions seem to leave
no doubt that the goods belong to the company until delivery
is made to the customer, and that in soliciting the orders and
making deliveries the defendant acted as the representative of
the company; and this position is fortified by reference to de-
fendant's contract of employment which is made a part of the

agreement. That contract designates the company "employer" and the defendant "salesman," and provides: The Grand Union Tea Company agrees: (1) To pay to the salesman as compensation for his services twenty-five per cent on sales of baking powder; twenty per cent on tea, spices, extracts and sundries, and fifteen per cent on coffee and soap. (2) To furnish a wagon and harness for the conduct of the business. (3) To pay freight on shipments of goods. The salesman agrees: (1) Not to sell or exchange fixtures or equipment supplied by the employer without authority in writing. (2) Not to incur any obligations in the name of the employer. (3) Not to make repairs on equipment until first authorized by the employer. (4) Not to buy the route of another salesman nor sell his own route. (5) Not to sell any goods except those belonging to the company. Thus far the contract appears to be one of agency. "An agent is one who represents another called the principal in dealing with third persons." (Sec. 5413, Rev. Codes.)

There are, however, certain other provisions which at first blush seem to involve the transaction, as between the employer and the salesman, in doubt. The provision that the salesman shall pay for the goods upon their delivery to him, if standing alone, would seem to indicate that an absolute sale was contemplated and that title to the goods passed to the salesman before they were delivered by him to the customers. In cases arising from the consignment of goods under special contract, it is often difficult to distinguish between a sale absolute and a contract of agency, because of the mixed motives of the parties and the artless or artful framing of the contract it frequently contains provisions characteristic of each. If the contract provides that the consignee shall pay for all goods delivered to him, whether they are sold and delivered to the customers or not, and that he may sell or otherwise dispose of them to whom he will and at whatever price he will, the transaction is a sale whatever term may be applied by the parties to describe it. On [2] the other hand, if title to the goods remains in the consignor and undelivered goods are to be returned to it, the trans-

action is one of agency, even though the consignee may be held responsible for the payment of the purchase price of the goods delivered to the customers. (31 Cyc. 1200, 1201.) The relationship is substantially that of principal and agent to sell upon a *del credere* commission. In *Leverick* v. *Meigs,* 1 Cow. (N. Y.) 645, it is said that the legal effect of a *del credere* agreement is that the agent for a consideration, when he sells the goods of his [3] principal, becomes bound to pay the price at all events. (2 Mechem on Agency, sec. 2534.) It is competent for a principal and his agent to agree that the principal shall be secured against loss on account of sales to irresponsible parties or on account of the mistakes or dishonesty of the agent. It is not essential to the existence of the relationship of principal and agent that the agent be clothed with authority to incur obligations in the name of the principal. "An agent has such authority as the principal actually or ostensibly confers upon him." (Sec. 5430, Rev. Codes.)

Though it is extremely difficult to reconcile some of the conflicting averments which appear in the agreed statement (including the contract), we are led to the conclusion from a consideration of all the provisions that title to the goods remained in the Grand Union Tea Company until delivery was made to its customers; that the company fixed the prices at which the goods were sold; that defendant's interest extended no further than his commissions upon the sales made by him, and that the obligation imposed upon him to advance the price upon receipt of the goods was intended merely to relieve the company from possible loss. (*Grand Union Tea Co.* v. *Evans,* 216 Fed. 791.)

The statute under which the prosecution is conducted is penal [4] in character, and its provisions are not to be extended by implication. (*In re Wisner,* 36 Mont. 298, 92 Pac. 958.) In order to subject this appellant to the penalty of the statute, it must appear clearly that his acts were within the letter as well as the spirit of the Act. (*McLaughlin* v. *Bardsen,* 50 Mont. 177, 145 Pac. 954.) We think it cannot be said that this appel-

lant is an itinerant vender within the meaning of the statute in question.

Cases not directly in point, but illustrating in a measure the views herein expressed, are: *State* v. *Wells,* 69 N. H. 424, 48 L. R. A. 99, 45 Atl. 143, *State* v. *Bristow,* 131 Iowa, 664, 109 N. W. 199.

The judgment and order are reversed and the cause is remanded, with direction to discharge the defendant.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.