THOMAS O. WHITE, an Infant by EDWARD K. WHITE, his Guardian Ad Litem, Plaintiff and Respondent, v. S. C. SORENSON, an Individual doing Business under the Firm Name and Style of S. C. Sorenson Company, Defendant and Appellant.

No. 10353
Submitted November 19, 1962. Decided January 4, 1963.
377 P.2d 365.

Robert H. Wilson (argued orally), Hardin, for appellant.

Kronmiller & Freeman, Douglas Y. Freeman (argued orally), Hardin, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant from a judgment in favor of the plaintiff in a statutory action of claim and delivery commenced by the plaintiff by and through his guardian, ad litem.

The facts are as follows: S. C. Sorenson doing business as S. C. Sorenson Company is engaged as a used car dealer with his principal place of business at Hardin, Montana, where he maintained an office and a sale car lot. During the Fall of 1956 he had as an employee, one Willie Gartner, who was employed as a salesman on a commission basis. On or about December 7, 1956, the defendant had left Willie Gartner in charge of the lot, and cars on the lot that were for sale, and went to the State of Texas on a trip. The plaintiff, Thomas O. White, came into the place of business on that date looking for a good used car. At that time the plaintiff was a boy of 17 years and he had with him his father, Edward K. White, and a friend, Joe Boid. They were driving a 1954 Pontiac automobile, which had been left to the plaintiff by his grandfather, and during the course of the day after considerable negotiations and demonstrations by Gartner they entered into an agreement to purchase a 1955 Oldsmobile 88, 4-door automobile for the sum of $300 and the trade-in of the 1954 Pontiac. A check, in the amount of $300 made out to Willie Gartner, was delivered for the Oldsmobile and on said check was the statement "Paid in full for the Oldsmobile car."

It is interesting to here note, that while the White family lived in Big Horn County their place of residence was 135 miles from the City of Hardin, in other words, they made a round trip of 270 miles that day.

Upon the conclusion of the sale by Gartner, the plaintiff

was given a signed document, reciting the terms of the sale which document was entitled "Invoice". This document was to be used by the plaintiff to show ownership until the title of the car was sent to him.

At the completion of negotiations, and after the check had been given to Gartner for the car, and the plaintiff's personal possessions had been taken out of the Pontiac and put into the Oldsmobile, the plaintiff was told by Gartner that "as soon as the bank opened or something, he'd get title, meaning title to the Oldsmobile, and we'd mail our title and he would mail his."

During all of negotiations nothing was said relative to authority of Gartner, as to the sale of the cars or the valuation of trade-in cars. Upon Sorenson's return to Hardin, he directed Gartner on two occasions to write to the plaintiff asking him to come and discuss this deal further.

On December 22, 1956, the plaintiff, accompanied by a friend returned in the Oldsmobile to Hardin in response to said letters, where he met the defendant Sorenson for the first time, and at that time he gave Sorenson a certificate of title to the Pontiac car. Sorenson told the plaintiff that he could not let him have the Oldsmobile as he had no title for it and he asked if there was not some other car in the lot he would take. Plaintiff tried out a Buick car, and before returning to the ranch tried to get in touch with his father over the long distance telephone to see if he would approve of the car. Unable to do so, he returned to the ranch with the Buick, leaving the Oldsmobile on defendant's lot. Plaintiff was given an invoice by the defendant for the Buick, and was requested to secure his father's signature for same. Two days later, on December 24, plaintiff returned with his father and the Buick to see the defendant who told them again that he could not get title for the Oldsmobile, also that he wanted more money. The father refused to accept the Buick in lieu of the Oldsmobile and they left, leaving with the defendant, the $300 check

and all three cars, the Pontiac, the Oldsmobile, and the Buick, were left on the sales lot of the defendant. From that date until January 27, 1957, the Oldsmobile remained in the possession of the defendant and on that date the sheriff of Big Horn County took possession of the Oldsmobile, and the car was delivered to the plaintiff. During this period of time, from December 24, 1956, and the time of taking January 27, 1957, the defendant had secured possession of title to the Oldsmobile. At an unspecified time, the defendant sold the Pontiac for $675. The plaintiff, after January 27, 1957, retained and used the Oldsmobile car, which was delivered to him by the sheriff of Big Horn county.

While the defendant set forth nine specifications of error in his appeal, when closely examined they all revolve around the question whether or not, Gartner was an agent of the defendant and if, from the facts shown, he was an agent, then the defendant must fail in his appeal.

The statute and case law in this state, on who are agents and what they can do as agents, acting for their principal, are well-established.

R.C.M.1947, § 2-122, provides: *"Measure of agent's authority. An agent has such authority as the principal actually or ostensibly confers upon him."*

R.C.M.1947, § 2-123, provides: *"Actual authority defined. Actual authority is such as the principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."*

R.C.M.1947, § 2-124, provides: *Ostensible authority defined. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."*

Interpreting section 2-122 (formerly Rev. Codes of 1907, section 5430), this court, in State v. Tuffs, 54 Mont. 20, 26, 165 P. 1107, 1108, said: "It is not essential to the existence of the relationship of principal and agent that the agent be

322

clothed with authority to incur obligations in the name of the principal.''

In considering section 2-124, this court in Monarch Lumber Co. v. Wallace, 132 Mont. 163, 314 P.2d 884, said: ''Whether an agent is acting under the actual or ostensible authority of his principal may be shown by direct evidence or by reasonable inferences to be drawn from the facts proved.''

The fact that Gartner was an employee of the defendant, and had been left on the sales lot with the authority to show, demonstrate, quote prices, make trade-in deals, most certainly pre-supposes that he was clothed with sufficient power to conduct the business.

Gartner, when called by the plaintiff to testify, said that when the defendant left for Texas that he, Gartner, was in charge of the lot; that he had the authority hereinbefore related; that he, before the defendant left for Texas, was instructed as to the prices of cars for sale on the lot; and that a list of prices were left with him to quote on any car sales deals. While the defendant denies the line of testimony the court was not in error in allowing same, for this court in the case of McCarthy v. Anaconda Copper Mining Co., 70 Mont. 309, 225 P. 391, said: ''A witness may testify whether he had certain authority and was charged with certain duties in his employment. * * *

''An agent is a competent witness on the question of his authority.''

It follows that Gartner was to all intents and purposes an agent of the defendant left in charge of the sales lot to deal with the public and to promote the sale of the used car on said defendant's sales lot.

Assuming that the defendant could have rescinded the acts of his agent due to the agent's lack of authority to make the sale, the defendant still loses due to the fact, he failed to notify the plaintiff and properly disavow the agent's acts. Here he had the agent write two letters, neither of which

can be held to disavow said acts. Rather, they ratify the sale, but call to the buyer's attention the fact that there is some title difficulty. This record is bone-bare of any proof by the defendant that he could not deliver title within a reasonable time and bountiful is its proof that the defendant wanted to back out of the deal he did not think would make him enough profit. Concerning the principal's duty to properly disavow the acts of an agent, who he contended acted beyond the scope of his authority, this court in McLaren Gold Mines Co. v. Morton, 124 Mont. 382, 396, 224 P.2d 975, 982, stated:

"It is settled that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; he is bound to disavow it the first moment the fact comes to his knowledge."

Also in Larson v. Marcy, 61 Mont. 1, 201 P. 685, the court said "it is the duty of the principal to repudiate the unauthorized act of his agent within a reasonable time after discovery unless he intends to be bound by it, and such repudiation must be brought home to the party beneficially affected."

Having considered the errors claimed by the appellant, we find no prejudicial error.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and DOYLE, concur.