No. 12608

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

HOWARD P. BLACKMER and DORIS R. YENNE,

Plaintiffs and Respondents,

-vs-

BOYD P. BLACKMER, individually, and as
Executor of the Estate of Fannie I.
Blackmer, Deceased; and LORRAINE E. BLACKMER,

Defendants and Appellants.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

For Appellants:

Rognlien, Hash, Jellison and O'Brien, Kalispell,
Montana
Kenneth E. O'Brien argued, Kalispell, Montana

For Respondents:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
I. James Heckathorn argued, Kalispell, Montana

---

Submitted: April 25, 1974

Decided: AUG 12 1974

Filed: AUG 12 1974

Thomas J. Kearney
                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the district court's judgment declaring the last will and testament of Fannie Blackmer and the execution of certain deeds by her to be null and void. Plaintiffs brought the action to have the will declared null and void because of Fannie Blackmer's mental incompetence at the time of making the will, and alleged undue influence exerted upon her by defendants.

These facts are not in dispute: Lucian and Fannie Blackmer were long time residents of the Flathead area. They had three children, Doris Yenne, Howard and Boyd. The Blackmers accumulated considerable holdings, including four hundred acres of land with two dwelling units; approximately $26,501 in United Funds; United States bonds in joint tenancy with son Howard in the face amount of $9,400 with accumulated value totaling $15,745; bank accounts in excess of $5,000; and miscellaneous farm machinery, equipment and tools. The real property and machinery were owned in the name of the father, Lucian Blackmer. The bonds had been put in Lucian and Howard's name at the time they were purchased while Howard was in the military service.

In 1959, Lucian and Fanny Blackmer made wills leaving their property to each other, if living. But if deceased, then 160 acres to Boyd, 160 acres to Doris, and 80 acres (including the house) to Howard who would also get the joint tenancy bonds on Lucian's death. Lucian recited in his will that although it appeared Howard was getting less, he actually was not, because of the provisions relative to the bonds.

In July 1968, the mother Fannie was hospitalized and diagnosed as having arterio sclerosis generalized, cerebral arterio coronary sclerosis, and senility. Upon discharge from the hospital she went to the home of son Boyd and his wife Lorraine (defendants

- 2 -

herein) where she resided until admitted to the hospital upon her final illness in May 1970.

The father Lucian Blackmer continued to live in his own home. He remained keen and alert, taking an active part in the management of the farm until his death on November 22, 1969, at the age of 89.

The facts in contention are numerous and concern the competency, undue influence and unnatural distribution of Fannie's second will dated December 29, 1969, and the execution and delivery of certain deeds by Fannie, executed on February 13, 1970.

Both plaintiffs and defendants called numerous witnesses to testify as to Fannie's mental competency and whether or not there was undue influence at the time she executed her will dated December 29, 1969. Included among the witnesses were her attorney, doctor, friends, relatives, and even casual acquaintances. All the witnesses testified that Fannie was a neat person and always took care of herself; that she always knew them and she could carry on an intelligent conversation. All the witnesses testified that she looked old, and had poor eyesight. Some testified that she became confused, especially as to time; that she was unable to dial the telephone herself because of her eyesight and at times she became upset. There was testimony that at one time she was upset because of a misunderstanding between her daughter Doris and herself over whether she had to sell her furniture. Other testimony was that she became upset when her daughter-in-law, Howard's wife, stated she tried to lock her grandson in the bathroom to keep him from going outside

There was testimony that the father, Lucian, conducted all the business of the family and Fannie's business management was limited to the running of the kitchen. But there was also testimony by Boyd Blackmer that Lucian always talked decisions

over with Fannie before making them.

The facts relevant to the actual making of the will are more limited. Lorraine Blackmer, defendant, testified that her father-in-law, before his death, had gone to see D. Gordon Rognlien, his attorney, twice to change his will but he was unable to see him on either occasion. She did not testify as to how her father-in-law wanted to change his will. Boyd Blackmer testified that Fannie said she wanted to change her will to read the way Lucian wanted the property distributed. Boyd was to get an additional 60 acres to prevent his septic tank from being cut in half. But, upon further testimony Boyd stated that no additional acres from the original disposition of property in the first will was necessary to prevent his septic tank from being cut in half.

It is undisputed that Boyd drove Fannie to her attorney, D. Gordon Rognlien, on the day she discussed drawing up a new will; that changing her will was the sole purpose of her visit to Rognlien's office and that Boyd accompanied her every time that she went to see her attorney. Rognlien testified that Boyd did not sit in on the first meeting between himself and Fannie when she gave him instructions on how the change in the will was to be accomplished. But Boyd testified that he was present at all the meetings between Fannie and Rognlien. Rognlien testified that he advised Fannie to use deeds to convey her property; that she conveyed 100 acres to Doris Yenne by deed, and then conveyed the remainder of the land to Boyd by deed. These deeds were inadvertently recorded, so Doris and Boyd reconveyed to Fannie and she then executed three new deeds, one conveying 100 acres to Doris which was placed in escrow, and two to Boyd, one conveying property outright, the other placed in escrow with Doris' deed. At the time of making the first deeds, Fannie also made a new will

leaving the remainder of her property not conveyed by the deeds to her children equally. This included personal property valued at $25,328.16.

There was much dissatisfaction expressed to Rognlien by Doris Yenne and her husband over the distribution of the property. Rognlien then called a meeting of Fannie, Boyd, Doris and Howard. With all of them present, Doris asked Fannie if this was how she wanted things done, to which Fannie replied "This is just the way I want it."

The trial court's finding of fact No. 20 stated "That at no time was Fannie acting under duress, nor was she insane" and finding of fact No. 21 stated "That on December 29, 1969, and on February 13, 1970, by reason of senility, her serious condition and love of Boyd and Lorraine, Fannie I. Blackmer was subject to undue influence. That by reason of the same, an extremely close and confidential relationship existed between Fannie, Boyd and Lorraine."

Then in its conclusions of law the court stated:

"1. That a fiduciary or confidential relationship existed between Mrs. Blackmer, Boyd and Lorraine Blackmer from the time of her release from the hospital in 1968 until the time of her death;

"2. That because Mrs. Blackmer was 85 years of age, frail in body, nearly blind, dependent upon others for her well-being, inexperienced in business affairs, and suffered from cerebral arteriosclerosis and senility, the nature of the transactions and the reasons given therefor coupled with the confidential relationship, gives rise to a presumption that the Will and Deeds were not freely, fairly and understandably made.

"3. That the delivery of deeds by Fannie I. Blackmer to D. Gordon Rognlien, to be held in escrow, constituted a good, valid and legal delivery of said Deeds."

Defendants present five issues for review, however our determination can rest on two issues.

1. Whether the judgment of the district court is supported

- 5 -

by substantial credible evidence?

2. Does the court's conclusion of law No. 2 give rise to a presumption of undue influence, or a presumption that a deed and will were not understandably and freely made?

Argument by the parties concerns the connotation of the presumption as used by the trial court in its conclusion of law No. 2. Disregarding matters raised outside the record we will only comment that these circumstances in Montana raise no presumption of any kind. Undue influence or incompetence is never presumed and must be proven, like any other fact. In re Coonougher's Estate, 141 Mont. 16, 375 P.2d 1009.

In Estate of Maricich, 145 Mont. 146, 157, 400 P.2d 873, this Court said:

> "'We agree that the right to make disposition of one's property by will is a right guaranteed by law and is as valuable as any other property right; and that the beneficiaries under a will are entitled to protection just as are other property owners * * *.'"

We also stated in Maricich that the law in the cases concerning undue influence places upon the contestant the burden of proof in showing substantial evidence of undue influence and recited a five point test to determine whether or not there is undue influence in executing a will. The five points are:

> "(1). Confidential relationship of the person attempting to influence the testator;

> "(2). The physical condition of the testator as it affects his ability to withstand the influence;

> "(3). The mental condition of the testator as it affects his ability to withstand the influence;

> "(4). The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence, and

> "(5). The demands and importunities as they may affect particular testator taking into consideration the time, the place, and all the surrounding circumstances."

Undue influence is defined by section 13-311, R.C.M. 1947,

as:

"1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"2. In taking unfair advantage of another's weakness of mind; or

"3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

It is undisputed that Fannie Blackmer lived with defendants from 1968 until her death in 1970. This would provide ample opportunity for the exercise of undue influence by defendants on Fannie. But a showing of opportunity is not enough. This Court stated in Hale v. Smith, 73 Mont. 481, 488, 237 P. 214:

" * * * It is not sufficient that the testator may have been influenced by the beneficiary in consequence of their fiduciary relationship in the ordinary affairs of life or that he lived with the beneficiary at the time of the execution of the will, in consequence of which she may have had better opportunity than others to ingratiate herself with him. Mere general influence in the affairs of life or method of living at the time of the execution of a will by a testator is not proof of undue influence in the contemplation of our statute, and in order to establish it as a fact, it must be shown by proof that it was exercised upon the mind of the testator directly to procure the execution of the will. Mere suspicion that undue influence may have or could have been brought to bear is not sufficient. It is never presumed, and must be proven like any other fact. * * *" (Emphasis supplied.)

Therefore, it must not only be shown that Fannie lived with defendants, but that defendants exercised undue influence upon Fannie in the execution of the will and the deeds. No such proof was made here.

Much testimony was elicited from witnesses concerning Fannie's mental and physical health. She was an elderly person; she was 85 years of age. Many of her problems were because of her age, including poor eyesight, a sometimes failing memory, occasional confusion, and a diagnosis of senility, arterio

sclerosis generalized, and cerebral arterio coronary sclerosis. But all this does not make Fannie Blackmer testamentally incapacitated.

In Estate of Bodin, 144 Mont. 555, 560, 398 P.2d 616, a case in which the facts are quite similar but more flagrant than the instant case, this Court held 79 years old Minnie Bodin to be mentally competent even though she made her will from her hospital bed, dying from cancer and receiving narcotics and other medication to relieve her pain. The Court stated:

> "'And a testator is competent if he is possessed of the mental capacity to understand the nature of the act, to understand and recollect the nature and situation of his property and his relations to persons having claims on his bounty whose interests are affected by his will. In re Smith's Estate, 200 Cal. 152, 252 P. 325. The "testator must have sufficient strength and clearness of mind and memory to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them." Page on Wills (2d Ed.) §141. [Citing cases.]'"

Rognlien testified concerning his interview with Fannie about her will, and the preparation of the deeds: "Due to the fact of her age, due to the fact of her eyesight and due to the fact that she indicated a desire to make distribution unequally among her children I was very careful to examine her, talk to her and to be sure that she knew exactly what she was doing and what she wanted done. So I did make a special effort to convince myself that she was completely competent before I prepared her deeds. * * *" When later asked if he felt Fannie Blackmer was competent at the time of executing the will and deeds, Rognlien answered: "It is my opinion that she was completely competent and knew the nature of the business at hand and each time that I had occasion to talk to her about this."

As stated heretofore there is no doubt that Fannie Blackmer was old and had infirmities associated with old age. These

matters must be taken into consideration and correlated with the acts of influence presented to determine if in each case the acts amount to undue influence. Murphy v. Nett, 47 Mont. 38, 130 P. 451, cited and approved in In re Estate of Hall v. Milkovich, 158 Mont. 438, 492 P.2d 1388. Also the acts of influence must be as defined by this Court earlier in this opinion, and not mere suspicion, opportunity, love or confidential relationship or bad feeling or hate. An examination of the entire record before us fails to reveal substantial evidence of facts that support the findings and conclusions of the trial court.

The final question presented for consideration is whether there was sufficient delivery of the two escrow deeds executed by Fannie to Doris Yenne and Boyd Blackmer. Defendants' exhibit F shows that the deeds were delivered to Gordon Rognlien, Charles Hash, or Kenneth O'Brien, with these instructions:

> "I am delivering to you, or anyone of you two deeds, one to my daughter, Doris Yenne, and one to my son, Boyd Blackmer.
>
> "I am making this delivery to my son and daughter pursuant to Sec. 67-1514 of the 1947 Revised Codes of the State of Montana, which is a constructive delivery. In making this delivery I am placing these deeds out of my possession and beyond my control.
>
> "Both my said son and daughter know of this delivery and have given their consent thereto.
>
> "Upon my death you are instructed to deliver the said deeds to the grantees named therein.
>
> "Dated this 23rd day of February 1970."

These instructions were signed by Fannie Blackmer.

Plaintiffs claim that there was no intent to make a present transfer of title to the property; that there is a difference between a delivery under section 67-1512, R.C.M. 1947, which defines escrow delivery and section 67-1514, R.C.M. 1947, which defines constructive delivery. We find there is no need to discuss the

difference.

It is sufficient to say that this delivery comes within the meaning of section 67-1512 and is therefore a sufficient delivery. In Plymale v. Keene, 76 Mont. 403, 409, 247 P. 554, it was stated:

> " * * * if a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor in making such deposit reserves no power to recall or modify the same, or thereafter to control in any manner the disposition of the deed, the delivery will be deemed complete as of the date the deed is deposited. [Cases cited.]"

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

_____
                              Justice

We concur:

_____
  Chief Justice

_____

_____

_____
Justices

- 10 -