No. 14762

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

In the matter of the Estate of Ollie
May Vestal, Deceased.
FRED L. HEINTZ,

                              Claimant and Appellant,

        -vs-

STANLEY D. VESTAL, as Personal Representative
of the Estate of Ollie May Vestal, Deceased.

                         Respondent and Respondent.

---

Appeal from:  District Court of the Tenth Judicial District,
                Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        B. Miles Larson, Stanford, Montana

    For Respondent:

        James C. Wilkins, Jr., Lewistown, Montana

---

                  Submitted on Briefs:  Oct. 26, 1979
                           Decided: JAN 23 1980

Filed:  JAN 23 1980

*Thomas J. Kearney*
_____
                         Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Claimant-appellant, Fred L. Heintz, filed two claims against the estate of Ollie May Vestal. The claims were based on a note and an employment contract. The personal representative disallowed the two claims. The District Court denied the claim based on the note and partially allowed the claim based on the employment contract. It is from this judgment that Heintz appeals.

Heintz was employed as a farmhand by H. E. Vestal in 1959. H. E. Vestal died in 1960, and Heintz continued his employment with the surviving wife, Ollie May Vestal. Mrs. Vestal died in 1977 at the age of 85.

On August 7, 1974, the decedent signed a promissory note payable to Heintz. On the same day an employment agreement was drawn up which outlined the manner in which Heintz was to be paid for his services as the farm manager.

As to the facts which surrounded the execution of the note and the agreement, the District Court made the following findings: Heintz had inquired at a Lewistown Bank as to the drafting of the note, and the bank had refused to do it. Subsequently, Heintz made arrangements with the bank at Stanford, Montana, for the drafting of the note. Later, he drove the decedent to this bank where the note was prepared by the local banker. The District Court further found that the consideration for the note was for the use of certain vehicles, trailer rent, and percentage bonuses for work done by Heintz in 1960, 1961 and 1962. The decedent was 82 years old when the note was executed, lived alone on the farm, and Heintz was in charge of decedent's affairs.

The District Court found that Heintz had employed undue influence in securing the execution of the note. The court further

found that Heintz took nothing under the note because of waiver, the statute of limitations and because the date and amounts of the various claims, which were the basis of the note, were impossible to calculate. Under the employment contract the court found that Heintz was entitled to $700 per month plus 10% of the gross income of the farm over $20,000. Heintz had claimed that he was entitled to 10% of all the gross income plus the monthly payment.

For the purposes of this opinion we will consider the following two issues:

1. Did the District Court err in finding undue influence?

2. Did the District Court err in construing the employment contract?

Undue influence has been defined by statute as follows:

"(1) the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him;

"(2) taking an unfair advantage of another's weakness of mind; or

"(3) taking a grossly oppressive and unfair advantage of another's necessities or distress." Section 28-2-407, MCA.

The case law on this subject in this state has been extensive. The tests to be applied for the determination of undue influence are clear.

In Hale v. Smith (1925), 73 Mont. 481, 237 P. 214, the nephew of the testator had alleged undue influence and sought to have the will declared null and void. The District Court upheld the will and this Court affirmed. We said in that case:

"The influence exerted must consist of some act or power exercised over the mind of the testator, sufficient to destroy his free agency at the time of the execution of a will, so that in effect the will of another is thereby substituted for that of the testator . . .

"Mere general influence in the affairs of life

or method of living at the time of the execution of a will by a testator is not proof of undue influence in the contemplation of our statute, and, in order to establish it as a fact, it must be shown by proof that it was exercised upon the mind of the testator directly to procure the execution of the will." 73 Mont. at 488.

In Estate of Maricich (1965), 145 Mont. 146, 400 P.2d 873, we said:

"In a case involving undue influence the question is not what effect the supposed influence would have upon an ordinarily strong intelligent person, but its effect upon the person on whom it was exerted, taking into consideration the time, place, and all the surrounding circumstances." 145 Mont. at 159.

In Blackmer v. Blackmer (1974), 165 Mont. 69, 525 P.2d 559, this Court again considered undue influence:

"These matters [old age and the associated informaties] must be taken into consideration and correlated with the acts of influence presented to determine if in each case the acts amounted to undue influence." 165 Mont. at 77.

The test, therefore, may be stated as follows: The influence exerted must be such as to destroy the free agency of the influenced person with the will of another substituted. This influence must be exerted to procure the result desired by the influencing party. The amount of influence is determined by taking into consideration the mental and physical health of the party being influenced and correlating them with acts of influence which were exerted. In addition the court may take into consideration any or all of the surrounding circumstances.

"In determining the issue of undue influence, a court may consider:

"'(1) Confidential relationship of the person attempting to influence the testator;

"'(2) The physical condition of the testator as it affects his ability to withstand the influence;

"'(3) The mental condition of the testator as it affects his ability to withstand influence;

"'(4) The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and

- 4 -

"'(5) The demands and importunities as they may affect particular [donor] taking into consideration the time, the place, and all the surrounding circumstances.' Estate of Maricich, 400 P.2d at 881; Blackmer, 525 P.2d at 562." Cameron v. Cameron (1978), ___ Mont. ___ at ___, 587 P.2d 939 at 945, 35 St.Rep. 1723 at 1730. (Emphasis added.)

It is clear from the above cited language from the Cameron case that these are five elements which may be considered. In the instant case there was a close, confidential relationship between Heintz and decedent. The decedent's age required her to rely quite heavily upon Heintz to perform the physical acts which are necessary in running a farm. The decedent was 83 at the time the note was executed and the facts indicate that her age made her increasingly less able, physically, to withstand Heintz's influence. There is no indication that the decedent's mental condition would have made her exceptionally vulnerable to undue influence. The amount of the note does appear to be quite large in relation to the alleged consideration. The note was for over $26,000. The consideration alleged by Heintz included the use of certain vehicles, the cost of fuel for those vehicles, trailer rent, and percentage bonuses for 1960, 1961 and 1962. No records were kept of these debts. As to the demands and importunities there is the testimony that Heintz made all of the arrangements pertaining to the drafting and execution of the note and that the Lewistown bank had refused to perform this service. Heintz testified that he had initiated the note.

This issue can be resolved by considering the sufficiency of the evidence. This Court said in Cameron, supra:

"We will not substitute our judgment for that of the trier of fact, but rather will only consider whether substantial credible evidence supports the findings and conclusions. Those findings will not be overturned by this Court unless there is a clear preponderance of evidence against them. We will view the evidence in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence, yet still support the findings." ___ Mont. at ___, 587 P.2d at 945, 35 St.Rep. at 1729.

- 5 -

When all the facts are considered we find that there was substantial credible evidence to support a finding of undue influence. The District Court did not err when it made this finding. There is evidence to show that at the time the note was drafted and executed the will of Heintz was substituted for the will of the decedent and that this was done to procure the note.

Although there is conflicting evidence on this point, the findings of the trial judge must be affirmed if supported by substantial evidence. Such is the case here.

At the time the note was executed the parties also entered into a written employment agreement. The District Court made the following findings concerning this agreement: Heintz was to receive $700 per month plus 10% of the gross income from the farm. At the time of the decedent's death Heintz was receiving $900 per month for his services, which was $200 in excess of the written agreement. Soon after the decedent's death the personal representative of the decedent informed Heintz that his wages would be reduced to $700 per month plus 10% of the gross income which exceeded $20,000. Heintz continued working on the farm until September 1, 1977. The trial court further found that the gross income for the farm in 1977 was $54,556.61. Thus, Heintz was entitled to $3,455.66 plus $142.50 on grain stored in 1976, for a total of $3,598.16.

Heintz alleges it was error for the court to deduct the $20,000 and that he was entitled to 10% of the $54,556.61. (The $142.50 for the grain stored is not contested by either party.)

We hold that the written employment agreement terminated with the death of the decedent and a new oral agreement was reached between Heintz and the personal representative thereafter.

The written employment agreement did not specify the duration of its terms. Section 39-2-502(a), MCA provides:

- 6 -

"Every employment in which the power of the employment is not coupled with an interest in its subject is terminated by notice to him of: (a) the death of the employer . . ."

Heintz had notice of Mrs. Vestal's death and does not argue that he had an interest in the subject of his employment. The 10% of gross agreement was strictly to compensate Heintz for his services. As a result, the written agreement terminated upon the death of the decedent on May 5, 1977. The fact that Heintz was receiving $900 per month prior to May 5, does not alter the underlying terms of the contract. There is no indication in the record that the additional $200 per month was in lieu of the 10% bonus. Consequently, Heintz is entitled to 10% of the gross income from January 1 until May 5, 1977.

Heintz testified that in May, 1977, after decedent's death, he orally entered into a new employment contract with Stanley Vestal, the personal representative. The terms of the new contract were that Heintz was to receive $700 per month and 5% or 10% of the gross income over $20,000. The District Court found that the terms of the new contract were $700 per month and 10% of the gross income over $20,000. There is substantial credible evidence to support this finding. Consequently, Heintz is entitled to 10% of the gross income over $20,000 from May 5, 1977, until September 1, 1977, when Heintz terminated his employment with the Vestal farm. These figures, of course, are an expression of yearly totals. Because the times involved are less than a year, the figures must be recomputed on a pro rata basis for the two periods of January 1 to May 5 and May 5 to September 1, to express the proper amount which is owed to Heintz under the two agreements.

Affirmed in part, reversed in part, and remanded to the District Court for modification of judgment in conformity with the opinion.

_Frank I. Haswell_
--------------------------------
Chief Justice

We concur:

_Gen. B. Daly_
--------------------------------

_John Conway Harrison_
--------------------------------

_Daniel J. Shea_
--------------------------------

_John C. Sheehy_
--------------------------------
Justices