No. 80-243

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

EMPIRE STEEL MANUFACTURING COMPANY,
a Corporation,

                Plaintiff and Respondent,
    -vs-

R. E. CARLSON, doing business as
BURLESON TRANSPORTATION, and FRANK V.
BURLESON,

                Defendants and Appellants,

---

FRANK V. BURLESON,

                        Defendant and Third-Party
                        Plaintiff, and Co-Respondent,
        -vs-

R. E. CARLSON, doing business as BURLESON
TRANSPORTATION,

                        Third-Party Defendant and
                        Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone, The Honorable
              Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellant:

            Olsen, Christensen & Gannett, Billings, Montana

    For Respondent:

            Crowley, Haughey, Hanson, Toole & Dietrich,
            Billings, Montana
            Gary Beiswanger, Billings, Montana

---

                        Submitted on Briefs: November 6, 1980

                                    Decided: January 27, 1981

Filed: JAN 27 1981

_Thomas J. Kearney_
                            Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Empire Steel Manufacturing Company (Empire) filed its complaint in the District Court, Thirteenth Judicial District, Yellowstone County, alleging in the alternative, that it had a contract for the haulage of coal silos with either R. E. Carlson, d/b/a Burleson Transportation or Frank Burleson; that the contract for haulage had not been performed by either; and that it had incurred damages thereby. Carlson denied the haulage contract, and cross-claimed against Burleson for indemnity should Carlson be held liable to Empire. Burleson denied the haulage contract with Empire and cross-claimed against Carlson for indemnity should Burleson be held liable to Empire. The District Court entered judgment in favor of Empire and against Carlson for $17,723.55, plus accrued interest; against Carlson on his cross-claim against Burleson; and dismissed Burleson's cross-claim against Carlson.

Carlson appeals from the judgment of the District Court.

In essence, the District Court, sitting without a jury, found that Carlson through his employees had entered into a contract to haul coal silos for Empire for the sum of $250 per section of silo. Because Carlson refused to perform the contract, Empire had to procure another transportation carrier to do the hauling, resulting in the damages awarded to Empire.

Carlson raises these issues for our determination:

(1) The date of the alleged contract for haulage was August 17, 1972, and Carlson was not legally authorized to transport goods until August 28, 1972.

(2) The memorandum of Carlson's employee Lindner is insufficient to provide a basis for a valid contract.

(3) In any event, Empire did not accept Carlson's offer to contract nor rely on that offer in making its bid for the fabrication of the coal silos.

(4) The employment relationship between Burleson and Carlson was insufficient to bind Carlson to any contract with Empire.

We begin the discussion by noting, as we have in the past, that this Court, on appeal, may not set aside the findings of a District Court unless they are clearly erroneous. Rule 52(a), Mont.R.Civ.P. We do not substitute our judgment for that of the trier of fact, but only consider whether substantial credible evidence supports the findings. We view the evidence in the light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence, yet still support the findings. If credibility of witnesses is involved, the determination of the weight given to the testimony is the primary function of the trial judge sitting without a jury, and not that of this Court. Heintz v. Vestall (1980), ___ Mont. ___, 605 P.2d 606, 609, 37 St.Rep. 99, 102, Cameron v. Cameron (1978), ___ Mont. ___, 587 P.2d 939, 945, 35 St.Rep. 1723, 1729.

In early 1972, Empire was planning to bid for the fabrication of coal silos to be supplied to Bechtel Corporation at Colstrip, Montana. At that time, Burleson was a certificated Class 3 (now C) motor carrier, doing business as Burleson Transportation. Empire sought from Burleson a bid for the cost of the transportation of the silos from Billings to Colstrip. Burleson came to the Empire plant to review the blueprints and plans of the silos. Based on that examination,

his knowledge of the route, his desire for a "back haul", and a system he would devise to transport the silo sections over the highways to avoid obstructions, he gave Empire a bid of $250 per section for the transportation. Moreover, Burleson wrote up his bid and placed it in his "quote file" for later reference if Empire turned out to be the successful bidder.

The District Court found that Empire relied on Burleson's transportation bid in making up Empire's bid to Bechtel.

On July 3, 1972, Burleson entered into an agreement with Carlson to sell him the motor carrier business, including the authority to operate as a Class C carrier under a certificate issued by Montana's Public Service Commission. Carlson applied to the commission for transfer of the certificate, stating that the parties desired the transfer to become effective on July 8, 1972. On August 14, 1972, the Public Service Commission approved the transfer, but the certificate itself was not delivered to Carlson until he received it in the mail on August 28, 1972.

After signing the sales agreement, and while the application for certificate was pending, Carlson employed Burleson at a monthly salary of $1,000. Burleson was employed from July 1972, until December 31, 1972, to assist in the orderly transfer of the business from one owner to the other, and to introduce the new management to Burleson's business contacts. Carlson also employed Morris Lindner to assist in running the business.

In August 1972, Empire sought a firm written commitment for the silo hauling contract. Empire's employee, Greer, got in touch with Burleson on August 17, 1972, seeking a written confirmation of the $250 bid per section of silo. Greer went to Carlson's office and received a written memorandum, from Lindner, which stated:

-4-

"8-17-72

"EMPIRE STEEL MFG.
"BILLINGS, MONT.

"DEAR SIR

"WE WILL HAUL YOUR TANKS FROM BILLINGS TO
COALSTRIP FOR 250.00 DOLLARS PER TRIP IN
1973.

"THIS WILL INCLUDE LOADING AT EMPIRE YARD
& UNLOADING AT JOB SITE.

"BURLESON TRANSPORTATION

"/s/ M LINDNER"

Before Empire obtained the written memorandum, Burleson had informed Greer by telephone that the business had been sold to Carlson but that Greer should have "no problem" obtaining the written bid from Lindner, who was in Carlson's office. The bid was prepared by Lindner from Burleson's "quote file." At the time he received the memorandum, Greer told Lindner that Empire would let him know when they were ready to begin transportation of the silos. Greer understood that the bid he received from Lindner was on Carlson's behalf.

Empire was the successful bidder on the coal silos. In November 1972, Empire called Lindner to inform him that the first silo section was ready for transportation to Colstrip. Lindner then went to the Empire plant, viewed the silos, and informed Empire that Carlson would not transport the silos for the price set out in the memorandum. This refusal was later confirmed by letter and subsequently Carlson offered to transport the silo sections at a different price. Empire made other arrangements for the transportation. It issued a purchase order to Getter Trucking, which company transported the silos for a total price of $25,223.55. The District

Court determined that if Carlson had honored the written bid, the total costs for transportation to Empire would have been $7,500. On that basis, the court awarded Empire damages in the amount of $17,723.55, plus interest and costs.

Carlson's first issue is that he had no authority from the state prior to August 28, 1972, to enter into transportation contracts. He argues that the date the transportation company was sold to Carlson was July 13, 1972, but that approval was not secured from the Public Service Commission until it was received in the mail on August 28, 1972. Since the memorandum was executed by Lindner on August 17, 1972, Carlson contends the memorandum predates his authority to haul goods in Montana. Carlson further contends that it was Burleson's contract, not Carlson's, and that the agreement between Burleson and Carlson for the sale of the trucking business did not include work or contracts in progress while the application for certificate is pending.

Carlson points out that under the rules of the Public Service Commission, no application for the transfer of a Class C certificate may be retroactive, nor may it be effective until approved by the commission. He also points to section 69-12-313(1), MCA, which states in applicable part:

> "No Class C motor carrier . . . shall operate for the distribution, delivery, or collection of goods, wares, merchandise, or commodities or for the transportation of persons on any public highway in this state without first having obtained from the commission, under the provisions of this chapter, a certificate that public convenience and necessity require such operation."

It is undisputed that the application for transfer of certificate to Carlson was approved by the commission on August 14, 1972, although the certificate itself was not reissued and delivered to Carlson until August 28. Under the rules of the commission, the transfer was at least effective as of August 14. Nothing in section 69-12-313(1),

MCA, prevents an applicant from contracting, pending issuance of the certificate, for the transportation of goods. In fact, it is contemplated in section 69-12-313(4), MCA, that such contracts as are in existence at the time of the application will be submitted to the commission for its examination. In any event, the hauling here was not done until after August 28, 1972, when in fact Carlson was authorized by certificate and could have performed the haulage contract.

The District Court found no difficulty in the fact that the memorandum signed by Lindner was for "Burleson Transportation." In that connection, the District Court found that Empire's employee, Greer, went to the premises where Burleson had conducted business and where Carlson was carrying Burleson's business forward pending the application. At that time, Carlson's manager, Lindner, made the written memorandum, in the presence of Burleson, and at a time when it was undisputed between the parties that no such business entity existed. The court found that the name "Burleson Transportation" was used only because the Carlson name could not be used until the certificate of authority had been received by Carlson. The evidence supports this finding of fact by the District Court.

In his next contention, Carlson challenges the sufficiency of the Lindner memorandum to constitute a valid contract (See section 28-2-903, MCA). Carlson contends that "tanks" are not "silos"; that Lindner had no conception of the size of the silos that would be hauled at the time of the signed memorandum; and that the memorandum does not provide for insurance, for pilot cars, en route expenses, dates of haulage, nor the number of "tanks" to be hauled.

-7-

To support his contention, Carlson points to Lindner's testimony that he thought he was giving a bid on "normal tanks that you could haul on a flatbed trailer and go down the road 55 miles per hour without any problems with wires, pilot cars, or any of the other things that are involved;" that when Lindner wrote the memorandum, he did not have any information available to him as to the size of the materials to be hauled. Even Greer testified the silos were larger than usual and Greer admitted that "three different people might reach three different interpretations" on the memorandum. The memorandum, argues Carlson, constituted an offer to haul "tanks" and not silos and the offer to haul tanks was never accepted by Empire. Carlson argues that the mutual intention of the parties at the time in the sense which the promissor believed the contract to cover, related to tanks and not silos and that therefore, under sections 28-3-301 and 28-3-306(1), MCA, the memorandum must be interpreted against Empire. For the District Court to insert the word "silo" in place of the word "tank" constituted rewriting of the contract by the District Court, contra to our holding in Shuey v. Hamilton (1963), 142 Mont. 83, 381 P.2d 482, that contracts must not be rewritten by the court.

Empire answers this issue by replying that the memorandum itself was not construed by the District Court to be a contract in and of itself, but rather as an offer to Empire, which Empire accepted on August 17, 1972, when Greer told Lindner that Greer would let him know when Empire was ready to transport the silos to Colstrip. Thus, Empire contends acceptance of the offer was communicated to Carlson through his employee Lindner and this created a binding contract.

To constitute a valid memorandum of a contract, no particular form of language or instrument is necessary.

Johnson v. Ogle (1947), 120 Mont. 176, 181, 181 P.2d 789,
791. The memorandum must contain all the essentials of the
contract but if the material elements are stated in general
terms, not all the details or particulars need be stated.
Johnson v. Elliot (1950), 123 Mont. 597, 604, 218 P.2d 703,
707. Parol evidence is admissible to explain ambiguities in
the note or memorandum relied upon as establishing a contract,
and to apply the note or memorandum to the subject matter of
the contract. Johnson v. Ogel, supra, 120 Mont. at 182. At the
time the memorandum was executed, both Burleson and Lindner
were employees of Carlson, and accordingly, Carlson is
imputed to have whatever knowledge either employee had
respecting the subject matter of the contract which in good
faith in the exercise of ordinary care and diligence should
have been communicated from the employees to the employer.
Section 28-10-604, MCA. Here the employer is deemed to have
had notice of the facts known to his employees in entering
into the agreement, Stone-Ordean-Wells Co. v. Anderson
(1923), 66 Mont. 64, 212 P. 853, and notice to the employees,
or either of them, is notice to the principal. Caterpillar
Tractor Co. v. Johnson (1935), 99 Mont. 269, 43 P.2d 670.
Carlson employed Burleson in July 1972 and paid him a
salary for his work until December 31, 1972. Burleson's
function was to aid in smoothly transferring the Burleson
business to Carlson. Lindner's memorandum was based on
Burleson's "quote file" so that the Empire contract was a
part of the employment for which Burleson had been hired,
that is to transfer smoothly the Burleson business over to
Carlson. Lindner was the agent of Carlson, clothed with the
authority to conduct the business in the absence of Carlson,
and to enter into contracts of haulage for Carlson. See,
White v. Sorenson (1963), 141 Mont. 318, 377 P.2d 364.

-9-

Burleson had examined the blueprints of the silos at the time he was first in contact with Empire. His knowledge as well as that of Lindner is imputed to Carlson. Their parol evidence of that knowledge is properly applied to the memorandum to determine the parties' intent as to the subject matter of the contract. Johnson v. Ogle, supra. On that basis, we find the memorandum was sufficient.

Next Carlson contends that the method of acceptance by Empire was not sufficient to constitute a binding contract between the parties, and there is no proof that Empire relied on Burleson's figures in bidding for the Bechtel silos.

Carlson points out that when Empire contracted with Getter Trucking for the transportation of silos, Empire simply made out a purchase order to Getter as a means of confirming the contract between them. This method of acceptance, contends Carlson, is the only method that Empire should have used in accepting the memorandum offer.

The District Court answers this contention in its finding that Carlson's offer was accepted by Empire. Lindner and Burleson were both employees of Carlson and both knew that it was being delivered to Empire for the purpose of consummating the proposal previously offered by Burleson to Empire. Empire advised Lindner that it would notify him when the silos were ready to be transported. Upon their successful bid, Empire did request the transportation in accordance with the method of acceptance the parties had agreed to. These findings are supported by substantial credible evidence, are not clearly erroneous and therefore, under Rule 52(a), M.R.Civ.P., may not be set aside by us.

The last contention of Carlson is that since Lindner and Burleson were employees and not agents, no relationship

existed between either Burleson or Lindner with Carlson that would be binding upon him. In effect, Carlson is saying that Burleson and Lindner were mere employees, not agents, and that only agents could bind Carlson to the memorandum.

Here, Carlson is arguing that Burleson was an employee for limited purpose and as such, had no authority as an agent to bind Carlson to the haulage contract. Carlson further contends that if a principal-agent relationship did not exist between Burleson and Carlson, there could be no imputation of Burleson's knowledge to Empire, nor could the doctrine of collateral estoppel apply against Carlson.

The District Court found that Empire had relied on the contract in making its bid to Bechtel, based upon the cost figure for transportation furnished by Burleson and restated by Carlson through his agent Lindner. That is a correct appraisal of what the evidence shows the arrangement to have been. While the District Court did not state that it was relying upon estoppel against Carlson in so many words, it did conclude that Empire had relied upon the price given by Burleson and had changed its position in such reliance by entering into a contract with Bechtel Corporation; further that Burleson knew the plaintiff intended to rely upon such prices; and that Carlson was charged with such knowledge because Burleson was Carlson's employee. Therefore, concluded the court, Carlson was estopped from denying its obligation to perform the haulage contract. The evidence here indicates that Empire, relying upon Carlson and his employees, changed its position for the worse in making its bid to Bechtel, which shows reliance, an element of estoppel. City of Billings v. Pierce (1945), 117 Mont. 255, 161 P.2d 636.

-11-

The conclusions of law found by the District Court logically follow its findings of fact. We find no basis to say that the findings of the District Court are erroneous, much less clearly erroneous, as required by Rule 52(a). The judgment of the District Court is affirmed.

_____
        Justice

We Concur:

_____
  Chief Justice

_____

_____

_____
  Justices

This cause was submitted prior to January 5, 1981.