FILED

03/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0401

DA 17-0401

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 62

SOUTHWEST MONTANA BUILDING
INDUSTRY ASSOCIATION, et al.,

        Plaintiff and Appellant,

    v.

THE CITY OF BOZEMAN,

        Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Cause No. DV 99-71 Honorable David Cybulski, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Arthur V. Wittich, Montana Law Company; Bozeman, Montana

        For Appellee:

            J. Robert Planalp, Patrick C. Riley, Planalp, Reida, Roots & Riley, P.C.; Bozeman, Montana

                          Submitted on Briefs: March 7, 2018

                                    Decided: March 27, 2018

Filed:

_____
                         Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Southwest Montana Building Industry Association (SWMBIA) appeals three orders of the Eighteenth Judicial District Court, Gallatin County, which directed SWMBIA to transfer funds from the Impact Fee Payer Class Refund Account (Refund Account) to the City of Bozeman (Bozeman), to submit an accounting of the Refund Account, and for contempt of court. We affirm.

¶2 We restate the issues on appeal as follows:

> 1. *Did the District Court exceed its authority when it ordered SWMBIA to transfer the funds remaining in the Refund Account to Bozeman?*
>
> 2. *Is the District Court's December 19, 2011 Order regarding the transfer of the remaining Refund Account funds enforceable?*
>
> 3. *Did the District Court err by not disposing of the remaining Refund Account funds in accordance with M. R. Civ. P. 23(i)(3)?*
>
> 4. *Did the District Court abuse its discretion when it ordered SWMBIA to provide an accounting of the Refund Account?*
>
> 5. *Can SWMBIA obtain relief from the District Court's contempt order?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This case concerns the final disposition of approximately $227,000 remaining from a class action settlement. These funds currently reside in the Refund Account, which the District Court established and placed in SWMBIA's control to provide refunds to certain individuals and business entities who had paid "impact fees."

¶4 Pursuant to an ordinance adopted in 1996, Bozeman assessed these impact fees against property owners within certain "impact fee districts" for street, water, wastewater,

2

and fire protection. Bozeman collected the fees as a precondition to obtaining permits for construction or connecting to city services.

¶5 In 1998, Bozeman increased some of the impact fees, and a citizens' group submitted an initiative petition to further raise the fees for street, water, and wastewater. Voters approved this initiative and the increases became effective January 15, 1999.

¶6 On February 17, 1999, SWMBIA, a non-profit organization whose members include businesses involved in residential and commercial construction in Bozeman and the surrounding area, sued for declaratory relief. SWMBIA alleged the impact fee ordinances and their amendments were unconstitutional. SWMBIA did not itself pay impact fees, but it represented the interests of its members who had paid, and continued to pay, them. Among other relief, SWMBIA requested class action certification and a refund to the fee payers.

¶7 Over the next few years, SWMBIA amended its complaint and joined additional plaintiffs. The District Court granted SWMBIA's motion to certify the class, defining it as all persons and entities who paid or will pay an impact fee due to the 1996 ordinance or its amendments. The District Court designated SWMBIA as the class representative and SWMBIA's counsel, Arthur V. Wittich (Wittich), as class counsel.

¶8 After several years of litigation, the parties submitted a proposed settlement agreement to the District Court. On April 15, 2005, the District Court entered a Consent Decree and Judgment (Consent Decree) in which it declared Bozeman's impact fee ordinances and their amendments, and all impact fees assessed and collected thereto, were

3

valid and enforceable. Bozeman would pay the court $5,000,000, and these funds would be used to distribute partial refunds to the certified class and to pay Wittich as class counsel. Bozeman would also temporarily reduce its impact fee rates and employ a consultant to advise it on determining appropriate rates for future impact fees.

¶9 After receiving $5,000,000 from Bozeman, the District Court awarded Wittich attorney fees of $500,000. The District Court held all eligible class members who paid impact fees on or after July 1, 2001, would receive a 10% refund out of the settlement funds, "and those paying to the City under general governing powers prior to July 1, 2001 shall receive the balance of the lump sum payment as refunds." The District Court transferred the funds to the Refund Account and ordered Wittich to attempt to complete the refund process within six months.

¶10 By December 13, 2006, Wittich had calculated the refunds due the class members and distributed over $4,250,000 from the Refund Account. He informed the District Court he had been unable to locate or elicit a response from 87 potential claimants and their refunds remained undistributed. Wittich intended to keep the refund process open one more year, and promised the court a status report and closure recommendation by the end of 2007.

¶11 On February 7, 2008, Wittich filed another status report, along with SWMBIA's motion for final distribution and closure. In that report, Wittich reported he had distributed $25,746.67 since the previous status report, but over $211,000 remained in the Refund Account. SWMBIA asked the District Court to close the refund process and allow for a

final distribution of the funds to a new account not subject to the refund process. Since the class definition included payers who would be required to pay an impact fee in the future, SWMBIA recommended using the remaining funds to hire consultants to investigate and recommend future impact fee levels.

¶12 Bozeman objected to SWMBIA's recommendations. It contended using the remaining funds to hire consultants would violate the Consent Decree. Bozeman argued it should receive the remaining funds. Bozeman further moved the District Court to order Wittich to provide an exact accounting of the remaining funds.

¶13 On July 27, 2011, SWMBIA withdrew its motion for final distribution and closure. On August 1, 2011, the District Court held a hearing to discuss the status of the case. The District Court asked the parties either to agree on a plan or to submit proposals on how to resolve the case. Wittich doubted the parties could reach agreement and told the court, "I think we need an order." The District Court offered the parties the opportunity to submit proposals for resolving the case. SWMBIA and Bozeman agreed to do so.

¶14 After the hearing, SWMBIA proposed the District Court either follow the procedure SWMBIA had proposed in its withdrawn motion for final distribution and closure, or order the funds distributed to the parties who had already received refunds. SWMBIA proposed any funds unclaimed after additional refunds should escheat to the State. SWMBIA objected to any plan which allowed funds to return to Bozeman.

¶15 Bozeman objected to allowing SWMBIA to use the funds to hire consultants—a move which Bozeman characterized as "fund[ing] future litigation." Bozeman proposed it

5

take possession of the funds, advertise the funds' existence annually for the next three years, and then deliver any remaining funds to the Montana Department of Revenue in accordance with the Uniform Unclaimed Property Act.

¶16 On December 19, 2011, the District Court ordered SWMBIA to turn over all undistributed settlement funds to Bozeman within 14 days of receipt of the Order. It further ordered Bozeman to hold the funds and annually advertise or publish a notice that the unclaimed funds were available to class members who had not received settlement funds. The District Court held if any funds remained unpaid after ten years from April 15, 2005—the date of the Consent Decree—Bozeman could retain those funds.

¶17 However, the District Court inadvertently failed to send this order to the parties. The case fell dormant while the parties awaited a ruling until January 2017, when Bozeman filed a Notice of Issue with the District Court, and the District Court discovered its error and provided the December 19, 2011 Order to the parties.

¶18 Concurrent with its Notice of Issue, Bozeman also moved for an accounting of the Refund Account, after which SWMBIA voluntarily provided a status report and stated $227,077.79 remained in the Refund Account. Bozeman found this statement inadequate, and it moved the District Court to order SWMBIA to provide a detailed accounting of the Refund Account since February 1, 2008—the date of its previous status report. Bozeman advised the District Court SWMBIA had not yet turned over the funds remaining in the Refund Account in accordance with the December 19, 2011 Order.

¶19 On February 17, 2017, Bozeman petitioned the District Court for an Order to Show Cause why SWMBIA had not transferred the Refund Account funds to Bozeman as ordered. On June 13, 2017, the District Court held a hearing on the matter and found SWMBIA in contempt for not transferring the Refund Account funds to Bozeman. At that hearing, SWMBIA provided some bank records regarding the Refund Account which the court admitted under seal. SWMBIA also testified that between February 2008 and January 2017, when it received the District Court's December 19, 2011 Order, SWMBIA spent approximately $100,000 from the Refund Account on "fee consultants." The District Court ordered SWMBIA to provide an accounting of the Refund Account. This appeal followed.

## STANDARDS OF REVIEW

¶20 We review a district court's legal conclusions for correctness. *Guill v. Guill*, 2014 MT 316, ¶ 9, 377 Mont. 216, 339 P.3d 81 (citation omitted).

¶21 Whether a district court has jurisdiction to rule on a matter is a question of law which we review to determine whether the district court had authority to act. A court exceeds jurisdiction through acts which exceed the defined power of a court, whether that power be defined by constitutional provisions, express statutes, or rules developed by the courts. *Green v. Gerber*, 2013 MT 35, ¶ 12, 369 Mont. 20, 303 P.3d 729 (citation omitted).

¶22 Matters of administration of the litigation are left to the broad discretion of the District Court. *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140 (citation omitted).

7

¶23 The judgment and orders of the court or judge made in cases of contempt are final and conclusive, but may be reviewed by the Montana Supreme Court on a writ of certiorari. Section 3-1-523, MCA.

**DISCUSSION**

¶24 *1. Did the District Court exceed its authority when it ordered SWMBIA to transfer the funds remaining in the Refund Account to Bozeman?*

¶25 SWMBIA argues the District Court's December 19, 2011 Order requiring it to turn over all undistributed settlement funds to Bozeman is invalid. SWMBIA argues its own proposals were consistent with the Consent Decree and the District Court could have adopted either of them. SWMBIA maintains that, by issuing a ruling more consistent with Bozeman's proposal, the District Court ruled inconsistently with the Consent Decree and thus exceeded its authority and jurisdiction by effectively amending the Consent Decree with its December 19, 2011 Order.

¶26 SWMBIA argues the District Court could only have amended the Consent Decree under either M. R. Civ. P. 59(e), which provides a motion to alter or amend must be filed within 28 days after the entry of judgment, or pursuant to M. R. Civ. P. 59(f), which provides a motion to alter or amend be deemed denied if the court does not rule on it within 60 days. Thus, SWMBIA maintains the December 19, 2011 Order impermissibly substantively amended the Consent Decree.

¶27 Bozeman responds that SWMBIA is barred from arguing the December 19, 2011 Order improperly amended the Consent Decree under M. R. Civ. P. 59 because SWMBIA

8

did not raise this argument in the court below. Bozeman further responds SWMBIA is barred from arguing the December 19, 2011 Order is invalid because it failed to object in the District Court when it had the opportunity to do so.

¶28 This Court will not address an issue raised for the first time on appeal. *Larson v. Larson*, 2017 MT 299, ¶ 28, 389 Mont. 458, 406 P.3d 925 (citation omitted). In *Guill*, we held that where the appellant failed to object to, or move the district court to alter or amend, a judgment under M. R. Civ. P. 59(e), he could not raise the issue for the first time on appeal. *Guill*, ¶ 17. As such, SWMBIA cannot do so here. As SWMBIA failed to raise this issue below, we will not consider it now on appeal.

¶29 During the August 1, 2011 status hearing, SWMBIA conceded "we need an order" and readily agreed to provide a proposal in accordance with the District Court's plan. SWMBIA availed itself of the process, making no objections to the District Court's request for proposals, and then submitted a proposal without objection. Given this, it is disingenuous for SWMBIA to now take the position the District Court's Order was unnecessary.

¶30 Moreover, SWMBIA's argument the District Court's alleged failure to comply with M. R. Civ. P. 59(e) is "jurisdictional" is misplaced. SWMBIA relies on *In re Jennings' Estate*, 79 Mont. 73, 254 P. 1067 (1927), arguing the District Court was "without jurisdiction to subsequently amend or modify the judgment so as to change the substantial rights of the parties . . . ." In more recent times, we have cautioned against confusing time prescriptions with jurisdictional provisions. *Miller v. Eighteenth Judicial Dist. Ct.*, 2007

9

MT 149, ¶ 43, 337 Mont. 488, 162 P.3d 121 (citation omitted); *Green*, ¶ 22 (citation omitted). In *Miller*, we explained subject-matter jurisdiction involves the court's power to hear the case and can never be forfeited, waived, or conferred by a party's consent, while a time prescription "can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Miller*, ¶ 44 (citations omitted).

¶31 Here, M. R. Civ. P. 59(e) provides a time prescription; it does not involve the District Court's power to hear the case. SWMBIA has waited too long to raise the point, and any alleged failure to comply with M. R. Civ. P. 59(e) did not divest the District Court of jurisdiction in this case. Therefore, the District Court did not exceed its authority when it ordered SWMBIA to transfer the funds remaining in the Refund Account to Bozeman.

¶32 *2. Is the District Court's December 19, 2011 Order regarding the transfer of the remaining Refund Account funds enforceable?*

¶33 SWMBIA next argues the District Court's December 19, 2011 Order is unenforceable because it is based on an expired judgment. SWMBIA maintains the Consent Decree, issued April 15, 2005, expired April 15, 2015. SWMBIA relies on § 27-2-201(1), MCA, which, notwithstanding exceptions not applicable here, provides that the period prescribed for the commencement of an action upon a judgment or decree rendered in a court of record is within ten years.

¶34 Bozeman argues the ten-year time limit is inapplicable because the District Court retains the equitable power to administer this case as long as funds remain in the Refund Account. Bozeman alleges SWMBIA mischaracterizes the District Court's actions,

10

stating, "[T]his is not an action on a judgment; rather, this is an assessment of whether the District Court properly exercised discretion in fashioning an equitable order on the continued administration of the settlement funds to bring finality to the litigation." Relying on similar federal cases, Bozeman urges us to adopt the federal courts' approach. Bozeman further argues the Consent Decree implies the District Court would oversee this matter until the Refund Account was exhausted because the Consent Decree required Wittich to report on the status of the refund "at the conclusion of such refund process."

¶35 Federal courts have held a court retains traditional equity powers for litigation administration until all funds set aside in a class action settlement agreement are distributed. *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1402, *aff'd in part, rev'd in part, sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179 (2d Cir. 1987) (citation omitted). In determining the distribution of unclaimed class action settlement funds, trial courts have broad discretionary power to shape equitable decrees. *Van Gemert v. Boeing*, 739 F.2d 730, 737 (2d Cir. 1984).

¶36 Here, while the District Court contemplated a shorter timeframe in which SWMBIA would exhaust the Refund Account, Bozeman is correct that the language of the Consent Decree implies the District Court would continue to oversee the case so long as funds remained in the Refund Account. The District Court's actions were not to enforce an expired judgment, but to continue and resolve the administration of a class action settlement fund. To hold otherwise would mean a court could be barred from resolving issues which arise in the administration of an existing class action settlement fund, creating

11

situations where a class action settlement becomes unenforceable while distributions are ongoing.

¶37 Therefore, since funds remain in the Refund Account, the District Court's December 19, 2011 Order, providing for the resolution of the residual funds, is enforceable.

¶38 *3. Did the District Court err by not disposing of the remaining Refund Account funds in accordance with M. R. Civ. P. 23(i)(3)?*

¶39 SWMBIA argues the District Court erred when it ordered SWMBIA to return the remaining funds to Bozeman because the District Court should have disposed of those funds in accordance with M. R. Civ. P. 23(i)(3). SWMBIA argues that although M. R. Civ. P. 23(i) became effective January 1, 2015, it should apply to the December 19, 2011 Order because the parties did not receive and act upon that Order until January 2017.

¶40 M. R. Civ. P. 23(i)(3) specifies the distribution for residual funds remaining from class actions certified under M. R. Civ. P. 23. However, as noted under Issue 1 above, this Court will not address an issue raised for the first time on appeal. *Larson*, ¶ 28. SWMBIA did not raise this issue below, and thus it cannot do so here.

¶41 We hold that the District Court did not err when it did not dispose of the remaining Refund Account funds in accordance with M. R. Civ. P. 23(i)(3).

¶42 *4. Did the District Court abuse its discretion when it ordered SWMBIA to provide an accounting of the Refund Account?*

¶43 SWMBIA also appeals from the District Court's June 26, 2017 Order for Accounting, in which the District Court ordered SWMBIA to submit a full and complete

accounting of the Refund Account from February 2008 until the date upon which SWMBIA transfers the funds in compliance with the December 19, 2011 Order.

¶44 SWMBIA argues an accounting on an expired judgment is prohibited by § 27-2-201(2), MCA, and the December 19, 2011 Order is invalid and therefore cannot serve as the grounds to order an accounting.

¶45 Bozeman responds that the order for accounting falls within the District Court's broad discretion to control this litigation. It further maintains SWMBIA waived its right to contest this order because it did not object to Bozeman's motion for accounting.

¶46 In fact, when SWMBIA filed its response to Bozeman's motion for accounting with the District Court, it did not object to Bozeman's motion and contemporaneously filed a status report "that explains the funds that SWMBIA is holding." There, SWMBIA stated that $227,077.79 remained in the Refund Account as of December 28, 2016.

¶47 Bozeman found SWMBIA's statement inadequate, explaining, "How much did SWMBIA have in 2008 and what SWMBIA spent since then are the critical questions the accounting will answer." The District Court agreed.

¶48 Matters of administration of the litigation are left to the broad discretion of the District Court. *Fink*, ¶ 18 (citation omitted). These discretionary trial court rulings include such things as post-trial motions and similar rulings. *Fink*, ¶ 18 (citation omitted). Here, the District Court properly exercised its discretion when it ordered SWMBIA to provide an accounting of the Refund Account when nearly nine years had passed since SWMBIA's last status report. While in previous status reports, SWMBIA had supplied the court with

13

information regarding the amount it had paid out since the previous report, here, SWMBIA initially provided no information as to whether any funds had come into or gone out of the Refund Account between February 2008 and January 2017. Then, at the June 13, 2017 hearing it admitted it had spent $100,000 out of the Refund Account on "fee consultants," prior to receiving the District Court's December 19, 2011 Order, although it had provided no status reports to the District Court for years. The court is well within its discretion to order SWMBIA to account for the activities of the Refund Account from the time of SWMBIA's last status report in February 2008 forward.

¶49    Therefore, we hold the District Court did not abuse its discretion when it ordered SWMBIA to provide an accounting of the Refund Account.

¶50    *5. Can SWMBIA obtain relief from the District Court's contempt order?*

¶51    Finally, SWMBIA appeals from the District Court's June 28, 2017 Order on Show Cause Hearing, in which the District Court held SWMBIA in contempt for its failure to comply with the December 19, 2011 Order in turning over the remaining funds to Bozeman within 14 days of receipt of the Order.

¶52    SWMBIA argues the contempt order is invalid because the December 19, 2011 Order is invalid, and a party cannot be held in contempt of an invalid order.

¶53    Bozeman responds that under § 3-1-523, MCA, a contempt order is a final order and is not appealable, but can only be reviewed on a writ of certiorari. We agree.

14

¶54 As set forth above, we have held the District Court's December 19, 2011 Order is valid, and therefore SWMBIA's argument must fail. Moreover, Bozeman is correct that § 3-1-523, MCA, provides a contempt order is not appealable.

¶55 Therefore, SWMBIA cannot obtain relief from the District Court's contempt order. We affirm the District Court's Order on Show Cause Hearing.

## CONCLUSION

¶56 We hold the District Court acted within its authority when it ordered SWMBIA to transfer the funds remaining in the Refund Account to Bozeman. We further hold the District Court's December 19, 2011 Order, providing for the resolution of the remaining funds, is enforceable. We also conclude the District Court did not err when it did not dispose of the remaining funds in accordance with M. R. Civ. P. 23(i)(3). We further conclude the District Court did not abuse its discretion when it ordered SWMBIA to provide an accounting of the Refund Account. Finally, we conclude SWMBIA cannot obtain relief from the District Court's contempt order because § 3-1-523, MCA, makes a contempt order a final, non-appealable order.

¶57 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER

15