DA 23-0219

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 170N

IN RE THE MARRIAGE OF:

MIKI L. ADAMS,

     Petitioner and Appellee,

  and

DIRK S. ADAMS,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
                In and For the County of Park, Cause No. DR-20-43
                Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Dirk S. Adams, Self-Represented, Cambridge, Massachusetts

       For Appellee:

       Adrienne R. Ellington, Law Office of Adrienne Ellington, PLLC,
       Bozeman, Montana

       Jami L. Rebsom, Jami Rebsom Law Firm, P.L.L.C., Livingston,
       Montana

                            Submitted on Briefs:  January 31, 2024
                                  Decided:  August 6, 2024

Filed:

                        _____
                                  Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dirk S. Adams (Dirk) appeals from the Sixth Judicial District Court's March 16, 2023 order holding him in contempt of court and imposing a permanent order of protection ("Contempt Order"), the March 30, 2023 order denying him leave to file a motion for post-judgment relief ("Order on Lodged Motions"), and the April 19, 2023 order denying him leave to file a motion for post-judgment relief pursuant to M. R. Civ. P. 60(b)(3) ("Order Denying Post-Judgment Relief"). We affirm.

¶3 Dirk and Miki L. Adams (Miki) were married in October of 2013. Miki filed a Petition for Dissolution of Marriage on May 11, 2020. The District Court issued its Findings of Fact, Conclusions of Law, and Decree of Dissolution on September 27, 2021 ("Decree"). In the Decree, the District Court issued a 12-month No Contact Order precluding Dirk from contacting Miki.

¶4 The District Court later extended the initial 12-month No Contact Order for an additional five years but declined to issue a permanent order of protection against Dirk, reasoning that the existing safeguards were sufficient to protect Miki. The District Court based its conclusion to extend the No Contact Order on its finding that "Dirk has weaponized his Harvard legal education against Miki and her family" by filing a

2

"staggering" number of pleadings and actions for the purposes of, among other things, gaining access to Miki, harassing and punishing her, and causing her emotional and financial harm.

¶5 The District Court also declared Dirk a vexatious litigant based on his hundreds of filings in the dissolution proceedings, as well as numerous other lawsuits filed in other jurisdictions against Miki, members of her family, and her employer. These other jurisdictions include Massachusetts, California, Minnesota, and the United States District Court for the District of Montana. The District Court noted that sanctions against Dirk were pending in at least one of these other actions because of its frivolous and harassing nature. The District Court explained that Dirk "blew through [the court's] stop-sign"—a pre-filing rule—after Dirk's non-stop filing continued despite the court's restriction. The court noted it had "previously fined Dirk for his pleadings, and yet that type of pleading has not stopped." In declaring Dirk a vexatious litigant, the District Court ordered that:

> Dirk Adams is declared a vexatious litigant in the State of Montana. He shall not be allowed to file any further actions, represent himself in any future litigation, nor appear pro se without the express written consent of the appropriate Court. This Court would strongly recommend the same prohibition be enforced in any other jurisdiction.

Dirk appealed, and we affirmed. *In re Marriage of Adams*, 2023 MT 95N, 412 Mont. 553, 529 P.3d 878 ("*Adams I*").

¶6 Although we affirmed the District Court's Order declaring Dirk a vexatious litigant in *Adams I*, we did not include the specific language excerpted above in that Opinion. We noted, though, that at the time the District Court declared Dirk a vexatious litigant, the District Court observed that the Register of Actions (ROA) in this case contained nearly

3

400 entries (390), which the District Court found to be an "[u]nbelievabl[e]" amount. *Adams I*, ¶ 15. At the time of this appeal, the ROA contains an additional 100 entries. In light of Dirk's unrelenting conduct since being declared a vexatious litigant, we deem it appropriate to issue a separate Order of this Court, contemporaneous with this Opinion, declaring Dirk a vexatious litigant, incorporating the language from the District Court's Order we affirmed in *Adams I* and imposing additional conditions we deem necessary.

¶7 After the Decree was filed, Miki raised the issue of Dirk's failure to provide her with specific personal property awarded to her in the Decree. The District Court ordered Dirk to ship the awarded property, an Apple computer, to Miki's counsel by March 4, 2022. Dirk shipped a computer to Miki's counsel on April 4, 2022, but Miki determined the computer was not the computer awarded by the Decree. Miki was able to determine the computer Dirk shipped to her was different from the computer the District Court awarded her in the Decree because of its appearance, and because it contained no saved data and when she turned it on she was greeted with a message from eBay thanking the user for their purchase. Accordingly, Miki filed a motion seeking to hold Dirk in contempt and again requesting a permanent order of protection on June 27, 2022.[1]

¶8 The District Court held a two-day hearing on Miki's motion for contempt and a permanent order of protection. The hearing took place on December 6, 2022, and January 24, 2023. Dirk testified at the December 6, 2022 hearing that the computer he

---

[1] On July 5, 2022, Hon. Judge Jon A. Oldenburg, who had presided over the dissolution proceeding since its commencement, retired and jurisdiction was assumed by Hon. Judge Yvonne Laird.

shipped to Miki was the computer the District Court awarded her in the Decree. Six weeks later, Dirk testified at the January 24, 2023 hearing that he was able to find the awarded computer, and that he had been mistaken regarding the identity of the computer he shipped to Miki. Miki raised the issue that the awarded computer, provided approximately nine months after Dirk was ordered to ship it to her, was completely devoid of any of her data, which included work documents and personal photos.

¶9 In its Contempt Order, the District Court granted both of Miki's requests and made detailed findings regarding Dirk's behavior and attempts to circumvent the safeguards intended "to protect Miki while imposing minimal detriment to [Dirk]." The District Court concluded that "[b]ased on Dirk's relentless persistent efforts to harass and stalk Miki and Dirk's ongoing blatant refusal to comply with the terms of the No Contact Order and the Post Trial Order . . . a permanent order of protection is needed to protect Miki from further harm and injury." As a factual basis for these conclusions, the District Court found that Dirk's claims that he mistakenly sent the wrong computer to Miki were without merit. Specifically, the District Court found that Dirk's testimony that he found the awarded computer "some weeks after the first day of the hearing after a diligent and exhaustive search" was not credible given screenshots introduced by Miki showing that "[the computer's] location was known to Dirk and that it was in Dirk's immediate possession on and shortly after the first day of [the] hearing concluded." The District Court found that Dirk hid the awarded computer in his barn to circumvent the terms of the Decree and

post-trial orders, and that he linked the shipped computer to one of his electronic devices "so that he could track Miki's activities on [the shipped computer]."

¶10  The District Court made findings regarding Dirk's abuse of the legal system as a means of getting to Miki. Regarding a 2022 action against a third party in federal district court, the District Court found that Dirk subpoenaed Miki's banking records and deposed Miki for seven hours, asking Miki "questions intended to elicit information on Miki's whereabouts and home address." The District Court found that "sometime after moving to Utah, Miki learned that Dirk was having her followed by a third person . . . retained by Dirk, [who] photographed her car in the parking lot at her workplace." These photos were then shown to Miki in a separate proceeding filed by Dirk in Massachusetts. The District Court noted that "[w]hile much of this contact took place in discovery proceedings in other jurisdictions . . . such contact and the sensitive information sought by Dirk was neither necessary nor intended to prosecute his claims." The District Court concluded:

> Dirk has intentionally used litigation as a means to circumvent the No Contact Order and the Post Trial Order . . . . Throughout this proceeding, the Court has been patient with Dirk and attempted to craft safeguards to protect Miki while imposing minimal detriment to him. However, Dirk has repeatedly blown past these safeguards and persisted in his efforts to stalk and harass Miki. For these reasons, the Court finds that the safeguards set forth in the No Contact Order and Post Trial Order have proven insufficient to protect Miki from Dirk's egregious conduct.

¶11  At the close of the contempt hearing, the District Court instructed the parties that "*[t]he Court will not accept* any post hearing briefs or *any further motions in this matter without leave of the court*, which will not be granted until the [Contempt Order] has been finalized and filed, and unless directed by the Court. But there will be no further

6

filings . . . in this matter." (Emphasis in original.) This order ("Bench Order") was given in response to Dirk's request for post-hearing briefing on Miki's contempt motion.

¶12 After the District Court issued the Contempt Order, Dirk attempted to file two other motions, which the District Court denied in its Order on Lodged Motions due to Dirk's failure to seek leave to file the motions in compliance with the Bench Order. The court reasoned that the motions were "meritless" and "submitted as part of a vexatious effort to delay resolution of this proceeding." Undeterred, Dirk sought leave to file a motion for post-judgment relief under M. R. Civ. P. 60(b)(3). The District Court again denied Dirk leave to file the motion in its Order Denying Post-Judgment Relief, finding that the motion was "clearly frivolous and a blatant attempt to circumvent the Court's order of protection." In two separate appeals to this Court, Dirk appealed: (1) the Contempt Order and Order on Lodged Motions; and (2) the Order Denying Post-Judgment Relief. We have consolidated the appeals for this Opinion.

¶13 We will not reverse a court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion. *Boushie v. Windsor*, 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631 (citation omitted). Contempt is a discretionary tool for a court to enforce compliance with its own orders, and we review a district court's decision to hold a party in contempt for: (1) whether the court acted within its jurisdiction; and (2) whether the evidence supports the finding of contempt. *Lee v. Lee*, 2000 MT 67, ¶ 19, 299 Mont. 78, 996 P.2d 389 (citation omitted). When a district court's decision to grant or deny a motion under M. R. Civ. P. 60(b) involves "a discretionary appraisal or

weighing . . . of the facts of the case, we review the court's determination under an abuse of discretion standard." *In re Marriage of Hopper*, 1999 MT 310, ¶ 19, 297 Mont. 225, 991 P.2d 960 (citation omitted).

¶14 "The District Court is in the best position to observe and determine the credibility of witnesses and we will not second guess its determination regarding the strength and weight of conflicting testimony." *State v. Pound*, 2014 MT 143, ¶ 25, 375 Mont. 241, 326 P.3d 422 (citations omitted). A district court's discretion in controlling the administration of the litigation, including "such things as post-trial motions and similar rulings" is broad. *Southwest Mont. Bldg. Indus. Ass'n v. City of Bozeman*, 2018 MT 62, ¶ 48, 391 Mont. 55, 414 P.3d 761 (citation omitted).

¶15 On appeal, Dirk contests the Contempt Order on the ground that the parties made a "mutual mistake" regarding the identity of the computer, rendering the court's factual findings underlying its Contempt Order clearly erroneous. Dirk asserts the District Court erred in summarily denying his lodged motions in its Order on Lodged Motions and his Rule 60(b)(3) motion in its Order Denying Post-Judgment Relief. He argues that we should remand for an explanation of the District Court's rationale or for reconsideration of the three motions. Dirk's arguments are meritless.

¶16 Dirk does not challenge the District Court's jurisdiction to issue the Contempt Order. We therefore confine our review to the factual support underlying the Order. *Lee*, ¶ 19. Dirk argued extensively before the District Court that his failure to provide the correct computer awarded to Miki in the Decree was based on a good-faith misunderstanding, but

the record speaks for itself. Dirk shipped a computer that Miki immediately determined was not the computer awarded in the Decree. Regarding Dirk's arguments to the District Court and this Court that principles of contract formation and federal copyright law somehow relieved him of his responsibility to give Miki the awarded computer, they are so lacking in merit that we will not waste the bytes and ink to address them other than to note that they are nonsensical. Presented with conflicting testimony from Miki and Dirk, the District Court made a credibility determination that is abundantly supported by the record. We affirm the District Court's Order holding Dirk in contempt.

¶17 Turning to Dirk's appeal of the permanent order of protection, Dirk has advanced no cognizable legal argument in support of his assertion that the issuance of a permanent order of protection against him constitutes an abuse of the District Court's discretion; instead, Dirk uses this appeal as an attempt to rehash his factual contentions previously rejected by the District Court. Assuming solely for the sake of argument that the evidence *might* have supported Dirk's contentions, "we will not second-guess the District Court's evaluation of the testimony and will not reverse because the evidence might have supported other findings or conclusions." *Pound*, ¶ 25. The record reflects that Dirk has repeatedly used the judicial process as a weapon to pursue Miki, and to cause her emotional and financial harm. Dirk has sued Miki, members of her family, her employers, and even a dog walker across numerous state and federal courts. Given Dirk's relentless abuse of courtroom proceedings in the face of warnings and escalating sanctions, and Miki's

9

testimony regarding the effect of Dirk's behaviors, we decline to reverse the District Court's grant of a permanent order of protection against Dirk.

¶18    Dirk's contentions regarding the lack of rationale underlying the District Court's Order on Lodged Motions and Order Denying Post-Judgment Relief are unavailing. Dirk cites *In re Marriage of Crowley*, 2014 MT 42, ¶ 26, 374 Mont. 48, 318 P.3d 1031, for the proposition that "[f]indings must be sufficient . . . to permit review without speculation into a district court's reasoning." Dirk's reliance on *Marriage of Crowley* is misplaced. The District Court's reasoning in this case requires no speculation. The District Court found Dirk's motions to be "meritless . . . [and] submitted as part of a vexatious effort to delay resolution of this proceeding." The District Court concluded that Dirk's Rule 60(b)(3) motion was "clearly frivolous and a blatant attempt to circumvent the Court's order of protection." Dirk's contention that "[e]ven a vexatious litigant has the right to seek access [to court] if his claim appears meritorious" presupposes that his Rule 60(b)(3) motion appeared meritorious, and ignores the determination by the District Court that it was without merit. Requiring that the District Court fully and substantively entertain the "clearly frivolous" motion would defeat the purpose of the District Court's previously well-founded declaration—affirmed by this Court in *Adams I*—that Dirk is a vexatious litigant. The reason the District Court imposed restrictions on Dirk's pleadings was to provide both the court and Miki with some relief from Dirk's firehose of meritless pleadings and enable these proceedings to approach a final resolution.

10

¶19    Although not the basis for the District Court's denial, we also note that Dirk's motion under M. R. Civ. P. 60(b)(3) is subject to the time constraints imposed by Rule 60(c)(1), which states that "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." M. R. Civ. P. 60(c)(1). Miki correctly points out that even had Dirk been allowed to file his April 17, 2023 motion, it would be untimely given that the proposed filing sought relief from the September 27, 2021 Decree. Notice of Entry of Judgment was entered on October 6, 2021. In short, Dirk's motion was both frivolous and futile.

¶20    Miki requests an award of attorney fees and costs pursuant to M. R. App. P. 19(5), arguing that Dirk's "behavior and lack of reasonable legal or factual basis for bringing this appeal" entitles her to relief under Rule 19(5). The record demonstrates that Dirk has been admonished repeatedly for dilatory and harassing motions practice. Dirk has made these proceedings exceedingly burdensome for the District Court and Miki. Even after we affirmed the District Court's order declaring Dirk a vexatious litigant in *Adams I*, approximately 100 additional filings have been made in the District Court. This is, as Judge Oldenberg put it, unprecedented in the context of a dissolution case. The District Court's findings relevant to the Contempt Order are also extraordinary. The record strongly supports the finding that Dirk has attempted to weaponize his resources and legal education to pursue and harass Miki across numerous jurisdictions.

11

¶21 Miki is entitled to the relief she requests under Rule 19(5). Dirk's attempts to extend these proceedings by doubling down on his frivolous and dilatory motions practice, re-arguing simple property awards made by the Decree while citing inapplicable contract law, public policy considerations, and even intellectual property law—all in the face of numerous warnings and orders to cease these exact behaviors—require sanctions. We conclude an award of attorney fees reasonably incurred in responding to Dirk's appeals, now consolidated for the purposes of this Opinion, is proper. We also conclude that an additional sanction is appropriate under the circumstances.

¶22 Rule 19(5) provides, in relevant part:

> The supreme court may . . . sua sponte, award sanctions to the prevailing party in an appeal . . . determined to be frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds. Sanctions may include costs, attorney fees, or such other monetary or non-monetary penalty as the supreme court deems proper under the circumstances.

¶23 The history of this case demonstrates that Dirk has, as the District Court observed in its Order of April 18, 2022, "weaponized his Harvard legal education against Miki and her family." In the same order in which it made that observation, the District Court declared Dirk a vexatious litigant because it could "think of no other way to prevent Dirk from his harassing and vexatious behavior." And yet this present appeal reveals that the District Court's declaration, affirmed by this Court, was not enough. So although we deem it appropriate to award Miki all of her reasonable attorney fees and costs incurred in defending these appeals, we also take this opportunity to further restrict Dirk's privileges to use the courts of Montana for improper purposes, as reflected in the Order issued

12

contemporaneously with this Opinion. We also caution Dirk that should his frivolous, vexatious, and harassing litigation against Miki and those associated with her persist, such conduct will be subject to monetary sanctions imposed by this Court, separate from any fees and costs the opposing party may seek.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶25 Affirmed and remanded to the District Court for a determination of the amount of attorney fees and costs reasonably incurred by Miki in defending against these appeals and for an Order awarding those fees and costs.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON